# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 13, 2025

Lyle W. Cayce
Clerk

No. 24-40231

———————

John Doe, *individually and as next friends of Janie Doe 1 and Janie Doe 2, Minor children*; Jane Doe, *individually and as next friends of Janie Doe 1 and Janie Doe 2, minor children*,

*Plaintiffs—Appellees*,

*versus*

Holly Ferguson; Annamarie Hamrick,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:22-CV-814

———————————————————————

Before Jones, Barksdale, and Ho, *Circuit Judges*.

Rhesa Hawkins Barksdale, *Circuit Judge*:

In this interlocutory appeal, school-district officials Holly Ferguson and Annamarie Hamrick contest the denial of their qualified-immunity-based motions to dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (failure to state claim). Through this action, Plaintiffs John and Jane Doe pursue, *inter alia*, supervisory-liability claims under 42 U.S.C. § 1983 against Ferguson and Hamrick for permitting violations of their two minor children's right to bodily integrity. At issue in this appeal is only whether Plaintiffs' second-amended complaint plausibly alleges Ferguson and Hamrick possessed subjective knowledge of sexual abuse by school-bus-driver Frank

Paniagua, based primarily on the school district's possession of video-surveillance footage. Plaintiffs fail to do so. Therefore, for the at-issue supervisory-liability claims under § 1983, the denial of qualified immunity is VACATED; qualified immunity is GRANTED to Ferguson and Hamrick against those claims.

## I.

Plaintiffs claim two Prosper Independent School District (Prosper ISD) administrators, Superintendent Ferguson and former Transportation Director Hamrick (Defendants), failed to take action to stop school-bus-driver Paniagua from sexually abusing Janie Doe 1 and Janie Doe 2, in violation of their Fourteenth Amendment right to bodily integrity. In addition to those claims, the district court allowed claims under Title IX against Prosper ISD to proceed, as well as claims under § 1983 against Paniagua's estate.

But, this interlocutory appeal concerns only the supervisory-liability claims under § 1983 against Ferguson and Hamrick. Because denial of a motion to dismiss is at issue, the following recitation of allegations is based on Plaintiffs' operative (second-amended) complaint, in effect when their motions to dismiss were denied in part. (One day after Defendants filed this appeal, Plaintiffs filed a third-amended complaint, repleading, based on the denial in part of their motions to dismiss, equal-protection and failure-to-train claims under § 1983 against Defendants. This appeal, however, concerns only the second-amended complaint.)

During the 2021–22 school year, eight-year-old Janie Doe 1 and six-year-old Janie Doe 2 attended school in the Prosper ISD in Texas. The Doe children rode a bus driven by Paniagua to school three to four times a week. Each morning, after picking up Janie Doe 1 and 2, and before picking up other students, Paniagua would take the bus off-route and make an unscheduled

stop, where he would pretend to adjust Janie Doe 1 and 2's seatbelts as a pretext for reaching under their shirts and shorts to touch their bare chests, vaginas, and anuses.  This abuse was captured on the bus's on-board video surveillance.  Paniagua's taking the bus off-route and making unscheduled stops were also reflected in GPS tracking data. Additionally, Paniagua sometimes disabled the bus's GPS tracking functionality in order to conceal the location of the bus while he was molesting the Doe children.  This abuse began as early as September 2021 and occurred every morning the Doe children took the bus to school—upwards of 100 separate instances.

The surveillance footage and GPS data were "in the actual possession, custody, and control of Prosper ISD administrators including, but not limited to, Transportation Director Hamrick and Superintendent Dr. Ferguson, and actually showed Paniagua molesting" the Doe children.  "Based upon the District's surveillance policy, the Defendants' actual possession of the videos, and the fact that the videos showed the assaults, Plaintiffs believe and contend that Defendants were actually, subjectively aware of Paniagua's abuse of Janie Doe 1 and 2 but failed to act in response."

At least one Prosper ISD teacher or administrator was assigned to help with morning bus-drop-off, and up to five teachers or administrators were assigned to help with morning car-drop-off.  Although an exact time period is not provided in the complaint, "[f]or months", individuals assigned to morning drop-off observed that Paniagua would keep the Doe children on the bus for several minutes, alone, after the other children had departed.  During this time, Paniagua would again molest the Doe children.  After Janie Doe 2 deboarded the bus at school, Paniagua would ensure Janie Doe 1 was the last student off the bus so he could assault her at the back of the bus for three to five minutes.

24-40231

Those Prosper ISD teachers and administrators, unidentified in the complaint, asked Paniagua about Janie Doe 1's constant delays in deboarding, and Paniagua said she was helping clean the bus by "picking up trash". Plaintiffs also "believe" that the unidentified "teachers or administrators who observed this behavior . . . reported it to their superiors, but this evidence is" solely under Prosper ISD's "control . . . and Plaintiffs have not yet had an opportunity to conduct any discovery".

On Saturday, 7 May 2022, the Doe children told their mother, Jane Doe, that Paniagua "sometimes . . . touches them". That same day, Jane Doe informed Prosper ISD's transportation and police departments. On Monday, 9 May 2022, Prosper ISD police pulled surveillance video from Paniagua's bus, reviewed it, and sent the footage to the Prosper Police Department. The following day, the Doe children attended forensic interviews with personnel from Child Protective Services and the Child Advocacy Center.

Police arrested Paniagua on Wednesday, 11 May 2022. Following his arrest, he attempted suicide in jail and paralyzed himself. He died on 10 June 2022.

During February 2020, prior to the above-described events, Hamrick and Ferguson received a complaint from an unidentified parent concerning a different, unidentified bus driver's inappropriate "grooming tactics" toward the parent's young daughter. This driver was reassigned to a new route and no investigation was undertaken.

In August 2022, two months after Paniagua's death, Plaintiffs filed suit in state court against Prosper ISD. The action was removed to federal court that September. Plaintiffs filed their complaint in district court on 26 October 2022, asserting tort claims as well as claims under § 1983 and Title IX against Prosper ISD, Ferguson, and Paniagua's estate. The next day,

4

Plaintiffs filed their first-amended complaint, asserting the same claims against the same defendants. On 6 December 2022, Plaintiffs filed their second-amended complaint, asserting tort claims as well as claims under § 1983 and Title IX against Prosper ISD, Paniagua's estate, Ferguson, and Hamrick.

As noted, although Plaintiffs pursue additional claims, at issue in this interlocutory appeal are only their claims under § 1983 against Defendants in their supervisory capacities for permitting violations of the Doe children's right to bodily integrity, in violation of the Fourteenth Amendment's due-process clause. As also noted, Ferguson and Hamrick filed motions to dismiss under Rule 12(b)(6) (failure to state claim), claiming qualified immunity.

The district court on 27 March 2024 denied in part Defendants' motions to dismiss, concluding they were not entitled to qualified immunity against the claims under § 1983. In doing so, the court concluded the complaint plausibly alleged Defendants each "learned of Paniagua's inappropriate sexual behavior pointing plainly to the conclusion that he was sexually abusing the Doe Children . . . [and] Defendants demonstrated deliberate indifference toward the Doe Children's constitutional rights" by failing to "take action that was obviously necessary to stop or prevent the abuse, despite knowing about it, until they were notified by the Doe Children's mother". This conclusion was based on Plaintiffs' allegations that both Defendants: "were in actual possession" of bus surveillance video and GPS data; and were "actually, subjectively aware of Paniagua's abuse".

In addition, the court dismissed claims John and Jane Doe filed in their individual capacities. Regarding Plaintiffs' other claims, the court denied in part the motions to dismiss by Prosper ISD and Paniagua's estate, allowing Plaintiffs to pursue claims under Title IX against Prosper ISD, as well as a

claim under § 1983 against Paniagua's estate. The court dismissed, without prejudice, Plaintiffs' equal-protection and failure-to-train claims under § 1983 against Defendants, granting Plaintiffs leave to amend their complaint for those claims. As noted, a third-amended complaint has been filed as a result. Again, this appeal concerns only the relevant allegations in the second-amended complaint concerning the supervisory-liability claims under § 1983.

## II.

This interlocutory appeal by Ferguson and Hamrick from the denial of qualified immunity is permitted by the collateral-order doctrine. *E.g.*, *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023). "[O]ur court has jurisdiction to review a district court's order denying a motion to dismiss on the basis of qualified immunity only to the extent that the appeal concerns the purely legal question of whether the defendants are entitled to qualified immunity on the facts". *Id.* (quoting *Bevill v. Fletcher*, 26 F.4th 270, 274 (5th Cir. 2022)). "[W]e review *de novo* the denial of a qualified-immunity-based motion to dismiss". *Id.* (citation omitted).

## A.

Defendants contend *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), extinguished supervisory-liability claims under § 1983, including the test for school supervisory liability outlined in *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994) (en banc). We hold that *Iqbal* did not foreclose such claims; *Taylor* remains good law in our circuit. For starters, our court has continued to allow supervisory-liability claims under § 1983 in the 15 years since *Iqbal* was decided. *E.g.*, *Whitley v. Hanna*, 726 F.3d 631, 640 (5th Cir. 2013) (applying *Taylor* test in 2013); *Davidson v. City of Stafford*, 848 F.3d 384, 397–98 (5th Cir. 2017); *Brauner v. Coody*, 793 F.3d 493, 501 (5th Cir. 2015).

In any event, *Iqbal* concerned *Bivens* claims for invidious discrimination rooted in the First and Fifth Amendments, requiring showing purposeful discrimination. 556 U.S. at 677. Defendants point to language in *Iqbal* referring to the term "supervisory liability" as a "misnomer" in actions brought under *Bivens* or § 1983. *Id.* But the *Iqbal* majority took issue with the term "supervisory liability" only to the extent it invoked *respondeat superior* liability based on a subordinate's conduct. *Id.* The Court rejected the contention that a supervisor's "mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution" and concluded that "purpose rather than knowledge is required to impose *Bivens* liability" on a supervisor. *Id.*

Pursuant to *Taylor*, and as discussed *infra*, supervisors are not liable for mere knowledge, but for "demonstrat[ing] deliberate indifference toward the constitutional rights of the student by failing to take action" that itself "cause[s]" the constitutional injury. *Taylor*, 15 F.3d at 454; *see also Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Because this standard focuses on the independent misconduct of the supervisor, *Taylor* falls within *Iqbal*'s recognition that "each Government official . . . is only liable for his or her own misconduct". *Iqbal*, 556 U.S. at 677.

## B.

As noted, our court reviews *de novo* a ruling on a qualified-immunity-based motion to dismiss. *Edmiston*, 75 F.4th at 557. "[W]e must accept all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor". *Id.* (citation omitted). "We do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id.* (quoting *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019)).

In reviewing a ruling on a Rule 12(b)(6) motion, our court considers only "the facts stated in the complaint and the documents either attached to or incorporated in the complaint". *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (citation omitted). Dismissal is proper where plaintiff fails to "plead sufficient facts to state a claim to relief that is plausible on its face". *Id.* Facial plausibility means the pleaded "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged". *Iqbal*, 556 U.S. at 678.

"Qualified immunity protects officers from suit unless their conduct violates a clearly established [statutory or] constitutional right." *Converse v. City of Kemah*, 961 F.3d 771, 774 (5th Cir. 2020) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). "Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate the defense once properly raised." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (citations omitted).

If defendant asserts a qualified-immunity defense, "a plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct". *Converse*, 961 F.3d at 774 (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)). Plaintiff bears the burden to "plead facts which, if proved, would defeat the claim of immunity". *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citations omitted).

We have discretion as to which of the two prongs should be analyzed first; but, "often the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a [federal] right at all". *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (citation omitted). For the reasons that follow, Plaintiffs

fail to plausibly allege violation of a constitutional right. Therefore, we do not reach the second prong (whether right clearly-established).

Our court has held repeatedly: a student has a substantive due-process right to be free from physical sexual abuse; and such abuse by a school employee violates that right. *Taylor*, 15 F.3d at 450–52; *see Whitley*, 726 F.3d at 640. *Taylor* held:

> A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that:
>
> (1) The defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and
>
> (2) The defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and
>
> (3) Such failure caused a constitutional injury to the student.

*Taylor*, 15 F.3d at 454.

Therefore, to overcome Defendants' motions to dismiss based on qualified immunity, Plaintiffs must have pleaded facts permitting our court to draw a reasonable inference that: (1) Ferguson and Hamrick "learned of facts . . . pointing plainly toward" sexual abuse; (2) they showed "deliberate indifference toward" the Doe children's rights by "failing to take action" to stop the abuse; and (3) the "failure caused a constitutional injury to" the Doe children. *Id.*

"The deliberate indifference standard is a high one." *Whitley*, 726 F.3d at 641 (quoting *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir.

1998)).  "To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety."  *Id.* (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002)).  "The state actor's actual knowledge is critical to the inquiry—a failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, does not rise to the level of deliberate indifference."  *Id.* (quoting *McClendon*, 305 F.3d at 326 n.8).

We turn first to *Taylor*'s first prong:  subjective knowledge.  "Under *Iqbal*, we first look to Plaintiffs' Complaint, distilling the well-pleaded factual allegations—whose truth we are bound to presume at this stage—from any unsupported legal conclusions—whose truth we cannot assume."  *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014). For the court to accept an allegation about a defendant's subjective state-of-mind, the allegation must do more than "merely restate[] the standard required to demonstrate the requisite subjective knowledge".  *Edmiston*, 75 F.4th at 560.  "[W]e must carefully discern factual allegations from legal conclusions in plaintiffs' complaint".  *Id.* (citing *Robertson*, 751 F.3d at 388 (allegation that defendants "exhibited deliberate indifference" was "merely a legal conclusion", even if it "might have been couched as a factual allegation")).

Plaintiffs make the blanket allegation that Ferguson and Hamrick were "actually, subjectively aware of Paniagua's abuse . . . but failed to act in response".  Plaintiffs base this allegation on "the District's surveillance policy, the Defendants' actual possession of the videos, and the fact that the videos showed the assaults".

This is a legal conclusion that merely "restates the standard required to demonstrate the requisite subjective knowledge".  *Id.*; *see also Robertson*, 751 F.3d at 388.  Plaintiffs do not assert either Ferguson or Hamrick personally were notified of, or watched, the school-bus surveillance footage,

24-40231

instead alleging they were on notice of the footage "regardless of whether [they] bothered to look at the videos". The operative complaint does not identify who would first review extensive video-surveillance footage from all bus drivers in the district, or identify a chain-of-command for reporting such footage. Plaintiffs do not allege the videos were reviewed at all before 7 May 2022 when the Doe children first informed their mother of the abuse. Establishing Defendants' subjective knowledge would require at least two missing links in the causal chain: a subordinate reported the videos to his or her superiors; and those superiors either were, or reported the videos to, Ferguson or Hamrick. The complaint fails to allege either.

Plaintiffs also "believe" that unidentified teachers or school-level administrators who observed Paniagua's delayed drop-offs reported it to their superiors. They equivocate on this point, however, by asserting that any evidence of whether this occurred is solely within Prosper ISD's control and unavailable without discovery. The complaint does not identify Prosper ISD's reporting procedures, a reporting chain-of-command, or definitively allege that the suspicious behavior was reported. At most, this is a "naked assertion devoid of further factual enhancement". *Iqbal*, 556 U.S. at 678 (citation omitted).

Turning to the well-pleaded facts and viewing them in the requisite light most favorable to Plaintiffs, Prosper ISD possessed ongoing surveillance footage of all district bus drivers, as well as GPS data of their daily routes. Although Plaintiffs allege that, "regardless of whether the Defendants bothered to look at the videos, the videos . . . placed the Defendants on actual notice of the abuse", our precedent does not support imputing subjective knowledge based on mere access to information. *See Whitley*, 726 F.3d at 644 (police department's failure to notify about suspicious conduct could not be imputed to police lieutenant); *Taylor*, 15 F.3d at 448, 457.

11

In *Taylor—decided at the summary-judgment, not motion-to-dismiss, stage*—our court held a school principal possessed the requisite subjective knowledge of a teacher's abuse, based on *summary-judgment evidence* that the principal had, over a period of two years: spoken with the teacher "about being 'too friendly' with a particular female student"; "received complaints from parents about [the teacher's] favoritism toward certain girls in the classroom"; received reports of the teacher's inappropriate behavior from the school librarian, who at one point described the incident she witnessed as "child molestation"; and received reports that the teacher "was directing his inappropriate sexual behavior specifically toward Doe". *Taylor*, 15 F.3d at 456–57. In response, the principal failed to reprimand the teacher, remove the student from the class, or document complaints in the teacher's personnel file. *Id.* at 457.

In contrast, the school district superintendent in *Taylor* was entitled to qualified immunity because his position as an administrator did not automatically impute knowledge of conduct at the school level. *Id.* at 448, 457–58. He was not personally notified of the many instances of suspicious conduct, and our court did not impute knowledge of such conduct to him. *Id.* at 457–58. Subjective knowledge of conduct, rather than mere availability of information related to that conduct, determined whether administrators "learned of" the abuse. *Id.* at 457.

Plaintiffs make only one allegation of direct notice: that, in February of the school year prior to the one in issue, Defendants received a report about "grooming tactics" by a different bus driver toward a different student. This allegation fails, however, to establish subjective knowledge under the *Taylor* test because it does not, *inter alia*, involve Paniagua, the relevant subordinate. *Id.* at 454 ("defendant learned of facts or a pattern of behavior of inappropriate sexual behavior by *a subordinate* pointing plainly toward the

conclusion that *the subordinate* was sexually abusing the student") (emphasis added).

Because Plaintiffs fail to allege sufficient facts to plausibly show Defendants were subjectively aware of the abuse, we do not reach the second (deliberate-indifference) or third (constitutional injury) prongs of the three-prong *Taylor* test. And, as stated *supra*, because Plaintiffs fail to allege violation of a constitutional right, we do not reach the second prong of the qualified immunity test (whether right clearly established).

## C.

In this interlocutory appeal, our panel, including the panel member only "concurring in the judgment", grants Appellants qualified immunity against Plaintiffs' supervisory-liability claims. Despite "concurring in the judgment", however, the concurrence posits that Plaintiffs may still be able to pursue those claims against Appellants. It states: when this case resumes in district court, and "in the event [Plaintiffs' ensuing] discovery" regarding "their remaining claims" does "lead[] to information that supports [their supervisory-liability] claims dismissed today, it remains within the discretion of the district court to allow Plaintiffs to replead—and thereby hold accountable any official who could have protected these children . . . but failed to do so" (repleading position).

For starters, the 1977 case cited in support of the repleading position is far from being applicable. *See Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977) (holding denial of timely motion to amend a dismissed complaint was abuse of discretion; but, that holding did not concern, *inter alia*, qualified immunity or an interlocutory appeal). And, for the following reasons, the reliance on Federal Rule of Civil Procedure 15(a)(2) at this stage of the proceedings is yet another example of why the concurrence's repleading position is so inappropriate.

As reflected in this opinion, and as the concurrence concedes by implication, its repleading position is not at issue in this interlocutory appeal, because repleading after discovery was not raised by Plaintiffs in this appeal. *E.g.*, *Allen v. United States Postal Serv.*, 63 F.4th 292, 299 (5th Cir. 2023) (contentions not presented on appeal are abandoned). As stated in *United States v. Brace*, 145 F.3d 247, 255–56 (5th Cir. 1998) (en banc): "It goes without saying that we are a court of review, not of original error. Restated, we review only those issues presented to us; we do not craft new issues or otherwise search for them in the record . . . . It is for the parties, those who have a stake in the litigation, to decide which issues they want to pursue, at trial and on appeal."

Along that line, for this opinion to opine on whether such post-discovery repleading would, should, or could be allowed, would be to engage in the very same improper appellate instruction made by the concurrence, including, at the very least: presenting a prohibited advisory opinion, *see U.S. Bank Tr. Nat'l Ass'n as Tr. of Tiki Series IV Tr. v. Walden*, 124 F.4th 314, 323 (5th Cir. 2024) (a court "cannot render an advisory opinion on hypothetical or abstract facts") (citation omitted); violating the law of the case, *see Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002) ("[u]nder the law of the case doctrine, an issue of law or fact decided on appeal may not be reexamined . . . by the district court on remand") (citation omitted); and acting as counsel for Plaintiffs, *see Guidry v. Dretke*, 429 F.3d 154, 161 (5th Cir. 2005) (judge's role is not to "try the case for the parties") (citation omitted), *see also Coggin v. Longview Ind. Sch. Dist.*, 337 F.3d 459, 468 n.1 (5th Cir. 2003) (en banc) (Jones, J., dissenting) ("court need not make the lawyer's case") (citation omitted).

The concurrence's repleading position flies in the face of the proper role for appellate judges, as articulated beautifully by Justice (then appellate judge) Cardozo: "The judge, even when he is free, is still not wholly free.

He is not to innovate at pleasure.  He is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or of goodness." Cardozo, THE NATURE OF THE JUDICIAL PROCESS 141 (1921).  "In short, it is not for us to decide which issues should be presented, or to otherwise try the case for the parties." *Brace*, 145 F.3d at 256.

## III.

For the foregoing reasons, we VACATE the denial of qualified immunity to Holly Ferguson and Annamarie Hamrick for Plaintiffs' supervisory-liability claims under § 1983 and GRANT them qualified immunity against those claims.

JAMES C. HO, *Circuit Judge*, concurring in the judgment:

A public school official can be liable for sexual abuse suffered by a student, if the official "learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student," and "demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994). To demonstrate deliberate indifference, "a state actor must *know of* and disregard an excessive risk to the victim's health or safety." *Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) (cleaned up, emphasis added).

As the court today concludes, Plaintiffs did not allege sufficient facts to establish Defendants' subjective knowledge. I concur in the judgment. But in doing so, I make two observations. First, Plaintiffs will of course be permitted to pursue discovery on their remaining claims—which the court today leaves undisturbed. Second, in the event that discovery leads to information that supports the claims dismissed today, it remains within the discretion of the district court to allow Plaintiffs to replead—and thereby hold accountable any official who could have protected these children and kept them out of the hands of a pedophile, but failed to do so. *See* FED. R. CIV. PROC. 15(a)(2); *see also*, *e.g.*, *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977).

* * *

According to the panel majority, the preceding sentence constitutes an "advisory opinion," because "repleading after discovery was not raised by Plaintiffs in this appeal."

The notion that judges are forbidden from identifying issues that the parties could have presented—or could someday present—is demonstrably

wrong. A few examples immediately come to mind. *See*, *e.g.*, *California v. Texas*, 593 U.S. 659, 705 n.9 (2021) (Alito, J., dissenting) ("If the effect of the Court's decision is dismissal of this action for lack of Article III jurisdiction, the States may file a new action."); *see also Gonzales v. Carhart*, 550 U.S. 124, 169 (2007) (Thomas, J., concurring) ("I write separately to . . . note that whether the Partial–Birth Abortion Ban Act of 2003 constitutes a permissible exercise of Congress' power under the Commerce Clause is not before the Court."); *Printz v. United States*, 521 U.S. 898, 939 (1997) (Thomas, J., concurring) ("Perhaps, at some future date, this Court will have the opportunity to determine whether Justice Story was correct when he wrote that the right to bear arms 'has justly been considered, as the palladium of the liberties of a republic.'") (discussing theory "not raise[d]" by the parties). Just recently, the concurring opinion in *Neese v. Becerra*, _ F.4th _ (5th Cir. 2025), speculated on what impact subsequent legal developments "may" have on that case—while conceding that it "remains to be seen"—despite the fact that the parties did not brief those issues, either.

The Federal Rules of Civil Procedure expressly encourage district courts to "freely give leave" to plaintiffs to amend their pleadings "when justice so requires." FED. R. CIV. PROC. 15(a)(2). There's nothing wrong with noting that, under the Rules, a district court on remand may determine what "justice . . . requires" for the victims of a pedophile.