# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 30, 2026

Lyle W. Cayce
Clerk

No. 25-10451

_____

AL GILANI,

*Plaintiff—Appellant*,

*versus*

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER;
ANGELA MIHALIC, *Medical Doctor*; BLAKE BARKER, *Medical Doctor*;
WP ANDREW LEE, *Medical Doctor*; DWAIN THIELE, *Medical Doctor*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-1461

_____

Before RICHMAN, ENGELHARDT, and WILSON, *Circuit Judges*.
PER CURIAM:[*]

The University of Texas Southwestern Medical Center dismissed Al
Gilani from its medical school, citing his unsatisfactory academic
performance. Gilani sued under 42 U.S.C. § 1983, asserting that his
dismissal violated Title VI of the Civil Rights Act of 1964 and the Fourteenth
Amendment's Due Process Clause. The district court dismissed some of his

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

claims and granted summary judgment to the defendants on others. We affirm.

## I

We first address Gilani's Title VI claims. The district court granted summary judgment to the University of Texas Southwestern Medical Center ("UTSW") on Gilani's Title VI claims, and Gilani has not briefed those claims in this court. "It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument."[1] Because Gilani has forfeited his arguments, we will not disturb the district court's grant of summary judgment on those claims.

## II

Gilani sued several UTSW employees in both their individual and official capacities under § 1983. He also sued UTSW itself.

In the district court, Gilani conceded that his § 1983 claim against UTSW could not go forward. That leaves his § 1983 claims against the UTSW employees in their individual and official capacities. The district court dismissed these claims against the individual defendants in their official capacities, concluding that Gilani had failed to allege plausibly a Due Process violation—either procedural or substantive. The district court also concluded that the defendants were entitled to qualified immunity because Gilani had failed to allege plausibly a constitutional violation in the first place.

## A

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents

---

[1] *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008).

attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."[2]  "When a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims, however, the court can also properly consider those documents."[3]  Here, the defendants' motion to dismiss cited to an appendix supporting their motion for judgment on the pleadings.[4]  We consider the documents therein to the extent they are referenced in Gilani's complaint and central to his claims.

"When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff."[5]  Gilani entered UTSW in the fall of 2016, at which point he "had some difficulty with his first-year courses," failing five of them.  He was granted an extended leave of absence.  Upon his return, he was placed on academic probation, and he successfully remediated his first-year courses.

Over the summer before his second year of medical school, Gilani enrolled in a summer research elective in Uganda.  It is at this point that Dr. Angela Mihalic enters the Complaint.  Dr. Mihalic was Dean of Medical Students at UTSW.  Gilani alleges that he successfully completed the requirements of the summer elective, but that he was nonetheless given a failing grade—a failure engineered by Dr. Mihalic.  The failing grade was based on "accusations that [he] made misrepresentations regarding his

---

[2] *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

[3] *Id.* (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

[4] *See id.*

[5] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

research timeline and travel during his time in Uganda." UTSW's Student Promotions Committee ("SPC") placed Gilani on "Academic Warning."

At around the same time, Gilani failed his Gastrointestinal System course ("GI Block"). His score was three quarters of a percentage point below the pass cut-off. He was denied the benefit of a two-point curve that every other student was afforded. Dr. Mihalic forbade Gilani from "ever mentioning the abuse of the curve."

UTSW decided "to dismiss him from the medical school based on his academic performance, specifically, in the GI Block." Gilani contends that this decision was made by Dr. Mihalic and laundered—nominally—through the SPC. Gilani appealed, and the SPC reversed his dismissal on the condition that he remediate his performance in the GI Block. He would continue, however, to be on academic probation, and "[a]ny further academic or professionalism deficiencies w[ould] result in immediate referral to the [SPC], with possible additional actions, up to and including dismissal."

Gilani then failed his GI Block re-examination. He alleges that his exam was hand-scored, and that he was denied the opportunity to review the hand-scoring for accuracy. Again, Gilani asserts that Dr. Mihalic acted in the shadows to ensure this outcome.

The SPC sent Gilani a letter informing him of his dismissal from UTSW, "based on his purported failure of the duplicative, remedial exam [that] he was denied any opportunity to review for accuracy." Gilani appealed, and he was permitted to make an oral presentation at an SPC meeting. Gilani appealed again, this time to the Dean of UTSW. The Dean delegated to Dr. Thiele, a Vice Provost, the task "to review 'all materials relevant to [his] appeal' and to make a recommendation." Gilani sought a meeting with the Dean. The Dean declined and sent Gilani a letter indicating that he had "'decided to accept Dr. Thiele's recommendation and uphold

the [dismissal] decision' because Mr. Gilani's 'academic performance does not meet the standards required of [UTSW] medical students.'" This ended Gilani's studies at UTSW.

## B

We review de novo both a district court's dismissal for failure to state a claim and a district court's ruling on qualified immunity.[6] We begin with Gilani's procedural due process claim. Gilani alleges that his dismissal proceedings violated UTSW's policies. However, the Due Process Clause is not coterminous with good institutional practice. The question before this court is whether the procedure Gilani was afforded comported with the constitutional requirements of procedural due process—not UTSW's institutional policies.

We assume without deciding that Gilani had a liberty or property interest in his continuing education at UTSW.[7] The standard by which we assess the process Gilani was afforded prior to his dismissal depends on whether the dismissal was academic or disciplinary. Academic dismissals arise from deficiencies in a student's academic performance; disciplinary dismissals arise from misconduct.[8] In the context of medical education,

---

[6] *Inclusive Cmtys. Project*, 920 F.3d at 899; *Davila v. United States*, 713 F.3d 248, 257 (5th Cir. 2013).

[7] *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84-85 (1978) ("Assuming the existence of a liberty or property interest, respondent has been awarded at least as much due process as the Fourteenth Amendment requires.").

[8] *See id.* at 87 ("Misconduct is a very different matter from failure to attain a standard of excellence in studies.") (quoting *Barnard v. Inhabitants of Shelburne*, 102 N.E. 1095, 1097 (Mass. 1913)).

academic performance extends beyond mere scholastic performance to the personal qualities necessary to succeed as a physician.[9]

If his dismissal was disciplinary, Gilani was entitled to "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."[10] The opportunity to present his side of the story may be informal.[11]

If the dismissal was academic, the Due Process Clause imposes "far less stringent procedural requirements,"[12] as "[c]ourts are particularly ill-equipped to evaluate academic performance."[13] The school need only "fully inform[] respondent of the faculty's dissatisfaction with h[is] clinical progress and the danger that this pose[s] to timely graduation and continued enrollment."[14] The "ultimate decision to dismiss" a student must be "careful and deliberate."[15]

On appeal, Gilani recharacterizes his dismissal as disciplinary. He points out that dismissals for academic dishonesty may be disciplinary in nature, then asserts that the *University* engaged in academic dishonesty,

---

[9] *Id.* at 91 n.6 ("Personal hygiene and timeliness may be as important factors in a school's determination of whether a student will make a good medical doctor as the student's ability to take a case history or diagnose an illness.").

[10] *Goss v. Lopez*, 419 U.S. 565, 581 (1975).

[11] *Horowitz*, 435 U.S. at 85-86 ("All that *Goss* required was an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.'" (quoting *Goss*, 419 U.S. at 584)).

[12] *Id.* at 86.

[13] *Id.* at 92.

[14] *Id.* at 85.

[15] *Id.*

rendering the proceedings "disciplinary." But we are not required to accept as true Gilani's conclusory allegation that UTSW engaged in academic dishonesty, and the focus of our analysis is on the student's shortcomings.[16] Gilani's own pleadings establish that his dismissal was academic in nature. He was dismissed once, then permitted to re-enroll on the condition that he remediate his failure of the GI Block exam. Upon failing the re-examination, he was dismissed again "based on his purported failure" of the GI Block assessment. The Dean of UTSW later upheld the SPC's dismissal because Gilani's "academic performance d[id] not meet the standards required of UT Southwestern medical students."

Because his dismissal was academic in nature, Gilani was entitled to notice of the "faculty's dissatisfaction with h[is] clinical progress and the danger that this posed to timely graduation and continued enrollment."[17] The school's decision must be careful and deliberate.[18] Gilani was warned about his academic progress. The care and deliberation of the school's decision is demonstrated by its reconsideration of Gilani's first dismissal and the fact that it granted him an audience before the SPC. His dismissal comported with the requirements of procedural due process.

We proceed to the substance of Gilani's dismissal. Substantive due process review of academic dismissals is a "narrow avenue for judicial review" requiring "such a substantial departure from accepted academic norms as to demonstrate that the faculty did not exercise professional

---

[16] *See Wheeler v. Miller*, 168 F.3d 241, 248 (5th Cir. 1999) (concluding that basis of dismissal of Ph.D. candidate in psychology was academic when premised on student's grades, academic ethics, and approach to work).

[17] *Horowitz*, 435 U.S. at 85.

[18] *Id.*

judgment."[19]  The appropriate unit of analysis is the entirety of Gilani's career at UTSW.[20]  Here, evidence of UTSW's departure from its own policies may be relevant to the extent they show that the dismissal was arbitrary.[21]

Gilani pleaded that he was excluded from a two-point curve afforded every other student on the GI Block exam, and that this made the difference between passing and failing.[22]  It is a troubling allegation.  However, the Supreme Court confronted an analogous situation in *Ewing*.[23]  There, a student was denied the opportunity to retake a failed medical board exam—an opportunity afforded some of his peers.  The Supreme Court stated:

> Admittedly, it may well have been unwise to deny Ewing a second chance.  Permission to retake the test might have saved the University the expense of this litigation and conceivably might have demonstrated that the members of the Promotion and Review Board misjudged Ewing's fitness for the medical profession.  But it nevertheless remains true that his dismissal from the Inteflex program rested on an academic judgment that is not beyond the pale of reasoned academic decision-making when viewed against the background of his entire career at the

---

[19] *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 227 (1985).

[20] *See id.* at 217-19.

[21] *See id.* at 224-25 ("The University's refusal to allow Ewing to retake the NBME Part I is thus not actionable in itself.  It is, however, an important element of Ewing's claim that his dismissal was the product of arbitrary state action, for under proper analysis the refusal may constitute evidence of arbitrariness even if it is not the actual legal wrong alleged.").

[22] ROA.202.

[23] 474 U.S. at 227.

No. 25-10451

University of Michigan, including his singularly low score on the NBME Part I examination.[24]

The SPC considered Gilani's entire academic record. This included his course failures in the first year of medical school, his failure of the summer research elective, and failure on the initial GI Block examination and the re-examination. Both of Gilani's GI Block examinations were reviewed by Dr. Thiele, "a Professor of Internal Medicine, certified by the ABIM in the subspeciality of Gastroenterology." He concurred that the exams "reflect[ed] insufficient mastery of the subject matter." Even setting aside Gilani's failure of the initial GI Block examination, dismissal of a student with such a record does not show an exercise of judgment "beyond the pale of reasoned academic decision-making when viewed against the background of his entire career at the University."[25]

Gilani asserts that several of his academic failures were engineered by Dr. Mihalic. Gilani's complaint establishes that the SPC, Dr. Thiele, and Dr. Lee all reviewed Gilani's academic record. It also establishes that the same SPC that he alleges was in thrall to Dr. Mihalic once reversed his dismissal on the condition that he remediate his GI Block exam. Dr. Thiele's letter reveals that he "personally verified each individual exam question marked as 'incorrect' on Mr. Gilani's results." In this context, Gilani's allegations of a campaign against him headed by Dr. Mihalic are insufficiently plausible to survive a motion to dismiss.

Because the complaint does not plausibly allege a violation of Gilani's procedural or substantive due process rights, we do not reach the clearly

_____

[24] *Id.* at 227-28.

[25] *Id.*

No. 25-10451

established law prong of qualified immunity for the individual-capacity claims.[26]

\*     \*     \*

We AFFIRM.

---

[26] *Doe v. Ferguson*, 128 F.4th 727, 734 (5th Cir. 2025).