**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-20168
Summary Calendar

LINDA SLOAN,

Plaintiff-Appellant,

VERSUS

JOHN SHARP; ET AL,

Defendants,

JOHN SHARP, Comptroller, in his capacity as head of Comptroller of
Public Accounts for the State of Texas; TEXAS, STATE OF; GRUNDY
WILEY, Individually and in his capacity as an employee with the
State of Texas; COMPTROLLER OF PUBLIC ACCOUNTS

Defendant-Appellees.

Appeal from the United States District Court
For the Southern District of Texas
(H-94-CV-622)
January 8, 1998

Before DUHÉ, DeMOSS, and DENNIS, Circuit Judges.

DUHÉ, Circuit Judge:[1]

Appellant Linda Sloan, an employee in the Texas Comptroller's
office, alleged that her supervisor, Appellee Grundy Wiley, began
sexually harassing her in 1989 and that he continued to do so until
she was fired in late 1995. Sloan filed a Title VII claim against

---

[1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the Comptroller alleging quid pro quo sexual harassment and a hostile work environment. Sloan alleged that the Comptroller was liable for Wiley's acts. The complaint also included a § 1983 claim against Wiley alleging violation of Sloan's Fourth, Fifth, and Fourteenth Amendment rights. The district court dismissed the § 1983 claim for failure to state a claim. The Title VII claim was tried to a jury, which found for the Comptroller. We affirm.

**I**

In 1980, Sloan began working for the Comptroller in Fort Worth and Arlington, Texas. In 1988, she transferred to the Southwest office in Houston. In 1989, Wiley became the manager at the Southwest office. Paul Eicke ("Eicke") and Fern Francis ("Francis") worked as supervisors under Wiley and reported directly to him. Sloan reported either to Fern or Eicke.

Sloan alleges that once Wiley became the manager of the Southwest office, he began a pattern of sexual harassment that became progressively more intense. She testified to numerous events in the workplace, on the job away from the workplace and one occasion at her home of what she considered to be harassment by Wiley.

Sloan alleges also that Wiley tolerated her coworkers' harassment of her. Sloan testified that when she reported the incident to Wiley he told her that it "was a man's world and women have got to get used to this."

In another incident, another coworker touched Sloan in an inappropriate way. Sloan again alleges that she told Wiley about

2

the touching and that he took no action.

Last, Sloan states that a third coworker made an inappropriate remark to her. Sloan reported the remark to Wiley, and Wiley told the coworker to apologize to Sloan. Sloan alleges that shortly after the apology, Wiley and the coworker went into Wiley's office and began laughing.

In a final incident with Wiley, Sloan alleges that she was waiting in line to get cake at another office birthday party when someone pinched her buttocks. When she turned around she saw Wiley taking his hand down and she threatened to slap him. Sloan testified that Wiley left the room, and she went across the hall to visit with a coworker. A few minutes later, Wiley bumped into Sloan while she was talking to the coworker in the hall. The parties dispute whether Sloan was knocked to the floor.

After this incident, Sloan contacted Judy Brittain ("Brittain"), the employee assistance liaison for the Comptroller's office. Brittain talked with Sloan at length over the phone. Brittain investigated Sloan's sexual harassment claim and found no sexual harassment.[2]

As a result of her complaint, Sloan was transferred to the Northwest office in Houston in 1993. There, she worked for only five days and never returned to work. Because all employees must be removed from the payroll after twelve months without leave, Sloan was fired in late 1995.

---

[2]In addition to her telephone conversations with Sloan, Brittain also interviewed Wiley, Eicke, and Francis.

3

Sloan sued the Comptroller under Title VII claiming that the Comptroller was liable to her for quid pro quo sexual harassment and hostile work environment under the doctrine of vicarious liability and/or respondeat superior. She sued Wiley under 42 U.S.C. § 1983 for violating her Fourth Amendment right against unlawful search and seizure, her Fifth and Fourteenth Amendment right to due process, and her Fourteenth Amendment right to equal protection. Wiley successfully moved for dismissal under Rule 12(b)(6). Sloan's remaining claim against the Comptroller was submitted to the jury, and it found the Comptroller was not liable.

Sloan appeals arguing that the Rule 12(b)(6) dismissal was error and that the trial judge did not properly instruct the jury on the doctrines of vicarious liability and respondeat superior.

## II

### A. STANDARD OF REVIEW

A Rule 12(b)(6) motion is reviewed de novo. Johnston v. City of Houston, Tex., 14 F.3d 1056, 1059 (5th Cir. 1994). Ruling on a Rule 12(b)(6) motion requires the court to accept the allegations as true and view them in the light most favorable to the non-mover drawing all reasonable inferences in that party's favor. Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The motion is denied unless it appears to a certainty that the plaintiff can prove no set of facts that would entitle her to relief. McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992).

### B. ANALYSIS

Wiley moved for a Rule 12(b)(6) dismissal on the grounds that

Sloan could not seek relief under both Title VII and § 1983 because Sloan failed to show an independent basis for the § 1983 claim. Wiley relied primarily upon <u>Jackson v. City of Atlanta, Tex.</u>, 73 F.3d 60 (5th Cir.), <u>cert.</u> <u>denied</u>, 117 S. Ct. 70 (1996) which held that the same facts that support a Title VII claim cannot also support a separate § 1983 claim. The district court found that despite the fact that Sloan was given another opportunity to replead, she did not allege any conduct that supported her claim for a constitutional injury.[3]

The district court held that <u>Jackson</u> only reaffirmed the rule that a plaintiff may pursue claims under both Title VII and § 1983 if the predicate for the § 1983 is a right independent of one that Title VII creates. Moreover, the district court's analysis of the due process claim examines whether Sloan stated her claim with factual detail and particularity. Whether the claim arose from identical facts was not controlling.

The court found that Sloan did not allege any facts that could countenance a claim for a due process violation. When the court dismissed Sloan's third amended complaint, it stated that Sloan's repleaded complaint should state the specific conduct that resulted in damage to her bodily integrity and how it amounted to a constitutional deprivation. The court also stated that the amended pleading must address Wiley's qualified immunity defense. Sloan's

---

[3]Sloan only briefs the Fourteenth Amendment due process claim; therefore we address only that claim. All issues not briefed are waived. <u>Villenueva v. CNA Ins. Co.</u>, 868 F.2d 684, 687 n.5 (5th Cir. 1989); <u>Cinel v. Connick</u>, 15 F.3d 1338, 1345 (5th Cir. 1994).

fourth amended complaint does not address any of these requirements. Sloan argues that she alleges she suffered a due process violation when Wiley bumped into her and touched her leg, but she does not explain how this amounts to a due process violation. Nor does her complaint address Wiley's qualified immunity defense. She argues that Wiley does not have a qualified immunity defense because the court denied his motion for summary judgment based on qualified immunity and he did not cross appeal. Thus, he waived his defense. The record cites that Sloan refers to do not show that Wiley's qualified immunity defense was denied, and thus he has not waived his defense. Therefore, under <u>Schultea v. Wood</u>, 47 F.3d 1427 (5th Cir. 1995), Sloan has not pled her claim with factual detail and particularity. <u>Id.</u> at 1430.

## III

Sloan's second issue on appeal is that the court did not fully instruct the jury on <u>respondeat</u> <u>superior</u> and/or vicarious liability.

### A. STANDARD OF REVIEW

We review a trial judge's jury instructions with deference because "it is the inescapable duty of the trial judge to instruct the jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved." <u>Treadway v. Societe Anonyme Louis-Dreyfus</u>, 894 F.2d 161, 167 (5th Cir. 1990) (internal quotation marks omitted). We apply a two part test to evaluate objections to the failure to give a requested instruction.

6

The objecting party must first show that the proposed instruction correctly states the law. If it does, then we determine if the given instruction was misleading. We reverse the judgment only if the charge as a whole leaves substantial and unremovable doubt as to whether the jury was properly guided in its deliberations. Id. at 167-68.

**B. ANALYSIS**

Sloan requested that the trial court's instruction to the jury on respondeat superior read:

> The Court instructs you that respondeat superior in the context of this case means that the State of Texas is absolutely responsible for the acts of a supervisor who has the power to make employment decisions concerning the employee's discipline, promotion, performance evaluations, or termination.
> The Court finds that Plaintiff was in a protected group and that the alleged harassment complained of was based on sex.

As for her claim of a sexually hostile work environment, Sloan asked that the jury instruction read:

> Sexually discriminatory verbal intimidation, ridicule and insult may be sufficiently severe or pervasive to alter the conditions of the victim's employment so as to create a sexually hostile work environment.
> Under the legal theory that Defendant State of Texas subjected Plaintiff to a sexually hostile work environment, the State of Texas is liable for the sexual harassment acts of its supervisors if the supervisor was entrusted with the position of responsibility of supervising the employee.

The court's actual instructions explained the elements of quid pro quo sexual harassment and hostile work environment. Sloan argues that her proposed instructions fall within the two-part Treadway test. She argues that she meets the first part of the

7

test because the requested instruction correctly stated the law. Sloan contends that because one of the elements of quid pro quo and hostile work environment harassment is whether a defendant knew or should have known of the sexual harassment, leaving out her instruction would misguide the jury. Sloan argues that Wiley and/or Eicke and Francis' alleged commission of sexual harassment satisfies the prima facie elements of notice. Therefore, without the requested instruction, the jury would not have known that no additional reporting to supervisors was necessary for there to be notice where Wiley, Eicke, or Francis either perpetrated or acquiesced in sexual harassment.

The Comptroller argues that even if Wiley sexually harassed or acquiesced in sexual harassment, the Comptroller is not strictly liable. Sloan's proposed instruction misstates the law. In Patterson v. PHP Healthcare, 90 F.3d 927, 943 (5th Cir.), cert. denied, 117 S. Ct. 767 (1996), we held that agency principles apply to Title VII when intentional wrongs are committed in furtherance of employment; however, the December 10, 1997 tortfeasing employee must think that he is doing the employer's business when committing the wrong. Sloan fails to explain how Wiley thought that he was doing the Comptroller's business when he was allegedly sexually harassing her.

As for Wiley's failure to report the coworker's actions and/or remarks, the jury heard testimony that Sloan reported only one of the incidents to Eicke, Sloan's direct supervisor at the time, or to Wiley. Thus, there was sufficient evidence for the jury to

8

believe that Wiley did not know of the incidents with the coworkers.  Since Wiley did not fail to take action, then the Comptroller cannot be found liable.

AFFIRMED.