United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 14, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-30035

TYRONE CAUSEY; ET AL,

Plaintiffs,

TYRONE CAUSEY,

Plaintiff - Appellant,

versus

SEWELL CADILLAC-CHEVROLET, INC.  and
GENERAL MOTORS CORPORATION,

Defendants - Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, SMITH, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Tyrone Causey filed this 42 U.S.C. § 1981 action against Sewell Cadillac-Chevrolet, Inc. and

General Motors, Inc., alleging that he was subjected to racial discrimination while attempting to have

his car serviced.  Causey challenges the district court's dismissal of his claim against General Motors

and the dismissal of his claim again Sewell Cadillac-Chevrolet for failure to state a claim.  For the

reasons set forth below, we AFFIRM in part and REVERSE in part.

FACTUAL AND PROCEDURAL BACKGROUND

The facts as set out in the Amended Complaint are that Tyrone Causey, an African-American, took his 2000 Chevrolet Corvette to Sewell Cadillac-Chevrolet, Inc. (Sewell), for service that was covered under warranty. A "service man" inspected the vehicle and found that it was in need of repairs. However, when the serviceman learned that the vehicle was still under warranty, he changed his assessment and stated that no repairs were needed. Causey complained to the serviceman's superiors both in person and on the telephone, but to no avail. One of the individuals whom Causey saw in person signed a service receipt for the Corvette and indicated on the receipt that Causey was "not happy." This same person twice stated that "Niggers always want something for nothing," yelled to a security guard to escort Causey from the premises, and ordered Causey not to return to Sewell "ever again." Causey went to a different General Motors (GM) dealership, which fixed the Corvette to his satisfaction and under the warranty. Causey then filed this action naming Sewell and GM as defendants and seeking monetary and injunctive relief.

GM filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, or in the alternative, motion for summary judgment. Sewell also filed a motion to dismiss for failure to state a claim in accordance with Rule 12(b)(6). The district court granted the defendants' motions. The district court concluded that, to the extent that Sewell interfered with the warranty contract, Causey did not plead that this interference was motivated by racial animus. The district court determined that Causey's allegations showed that Sewell sought to avoid performing work that was covered by the warranty. Because the initial refusal to perform the requested work was not accompanied by the racial slur, the district court found that the refusal to perform the work was due to financial motives. Consequently, the district court granted Sewell's Rule 12(b)(6) motion. Furthermore, the district

2

court determined that Causey failed to allege that GM took any discriminatory action against him. The district court also concluded that Causey had not shown that GM was sufficiently connected to Sewell that it should be held liable for Sewell's actions. Causey filed a timely notice of appeal.

DISCUSSION

A.      Standard of Review

We review *de novo* dismissals under Rule 12(b)(6). Hamilton v. United Healthcare of Louisiana, Inc.,310 F.3d 385, 388 (5th Cir. 2002). In doing so, we accept as true the well-pleaded factual allegations in the complaint. Herrmann Holdings Ltd. v. Lucent Technologies Inc., 302 F.3d 552, 557 (5th Cir. 2002) (quotations and citations omitted). The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff. Sloan v. Sharp, 157 F.3d 980, 982 (5th Cir. 1998). The dismissal will be upheld only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957)).

Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred t o in the plaintiff's complaint and are central to her claim. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000) (quotations and citation omitted). If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c). Tuley v. Heyd, 482 F.2d 590, 592 (5th Cir. 1973). We review the grant of summary judgment *de novo*. Flock v. Scripto-Tokai Corp., 319 F.3d 231, 236 (5th Cir. 2003) (citation omitted). A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that

there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

B.      Sewell's Motion to Dismiss for Failure to State a Claim

In a commercial context, in order to establish a prima facie case under § 1981, the plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (5th Cir. 1997) (quotations and citation omitted).

Sewell argues that Causey's Amended Complaint avers he was refused service because he was not going to pay for it. Therefore, Causey has claimed that Sewell did not honor the warranty based on pecuniary motivations. Sewell contends that since no racial animus was pled, Causey's complaint should be dismissed for failure to state a claim. The district court agreed and granted the motion to dismiss.

At first blush, the district court and Sewell's interpretation of the pleading seems to easily dispose of Causey's claim. However, their narrow reading does not comport with the liberal pleading standard elucidated upon by the Supreme Court most recently in Swierkiewicz v. Sorema N. A.[1] Viewing the complaint as a whole, rather than any one statement in isolation, the plaintiff has established the scienter necessary to make a prima facie case. See Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113 (3rd Cir. 1998) (finding a reasonable inference of discriminatory intent could be drawn even though the complaint could be read to suggest an alternative motive).

_____

[1] See 534 U.S. 506 (2002).

4

Sewell does not contest that the use of the word "nigger" demonstrates racial animus.[2]

Instead, Sewell argues that even assuming arguendo that the racial epithet was used it was unconnected to the denial of service. Sewell emphasizes that the disparaging term was allegedly uttered after Causey was initially denied service by the serviceman and was not alleged to have been said by that serviceman. In essence, Sewell asserts that the racial animus cannot be imputed to the final service decision. This conclusion can only be reached by a very narrow reading of the facts in the pleading.

After the serviceman refused to repair his car, Causey persisted in requesting his car be repaired. He took his complaints directly to "high level supervisors in person and on the phone." It was at this point that Causey and the "individual" had their exchange, resulting in the offensive comment and Causey's removal from the premises. It can reasonably be inferred from the facts as pled, that the "individual" was a supervisor. The conclusion that the individual was a supervisor is buttressed by the fact that the individual had the authority to sign off on the service receipt, order the security guards to have Causey thrown off the premises, and tell him never to return. A supervisor has the ultimate authority to overrule or affirm a subordinate's decision. Thus, the final service decision was vested in the unnamed individual and not in the initial service person. Since a reasonable

_____

[2] Indeed, a racial epithet does demonstrate racial animus. See, e.g., Brown v. Mississippi Elec. Power Ass'n, 989 F.2d 858, 861 (5th Cir. 1993)("unlike certain age-related comments which we have found too vague to constitute evidence of discrimination, the term 'nigger' is a universally recognized opprobrium, stigmatizing African-Americans because of their race"); see also Brewer v. Muscle Shoals Bd. of Educ., 790 F.2d 1515 (11th Cir. 1986) (school superintendent's comment that he did not want to appoint plaintiff to an administrative position because he did not want to see the school system "nigger-riggered" is direct evidence of discriminatory animus, even though the comment was made after the alleged violation); see also Bailey v. Binyon, 583 F. Supp. 923, 927 (N.D. Ill. 1984) ("The use of the word 'nigger' automatically separates the person addressed from every non-black person; this is discrimination per se").

5

inference can be drawn that the individual who uttered the pejorative comment was also the ultimate decision maker, the racial animus is casually connected to the adverse action. We therefore conclude that Causey has pled discriminatory intent.

It is unclear if a violation of § 1981 arises when a plaintiff is trying to enforce a warranty contract against a third-party authorized dealership. However, when a merchant denies service or outright refuses to engage in business with a consumer attempting to contract with the merchant, that is a violation of § 1981. See Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 752 (5th Cir. 2001) (citing Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 874 (6th Cir. 2001)); see also Charity v. Denny's, 1999 WL 544687, at *3 (E.D. La. July 26, 1999) (citations omitted). Because Causey has pled that he is a minority who was denied service due to discriminatory intent, we conclude that he has established a prima facie case in the pleadings. Accordingly, the district court erred in dismissing the complaint.

C.      GM's Motion to Dismiss or for Summary Judgment

When the district court granted GM's motion, it did not state whether it was doing so under Rule 12(b)(6) or Rule 56(c). GM submitted documentary evidence to support its claim that it was a separate legal entity from Sewell. However, that does not clarify under which standard this court should review the dismissal because the documents at least arguably relate to Causey's complaint by explaining the relationship between Sewell and GM. See Collins, 224 F.3d at 498-99. Regardless of whether the dismissal is construed as one arising under Rule 12(b)(6) or Rule 56(c), the district court did not err in granting GM's motion.

This court considered a similar claim in Arguello v. Conoco, Inc., 207 F.3d 803 (5th Cir. 2000), cert. denied, 531 U.S. 874, 121 S. Ct. 177, 148 L. Ed. 2d 121 (2000). Arguello involved a

6

§ 1981 claim brought in relation to the racially discriminatory acts of clerks at independently owned Conoco gas stations. Id. at 805-08. The plaintiffs sought to recover against Conoco, which did not own the gas stations where the alleged discrimination occurred. Id. at 807. This court concluded that the plaintiffs could not recover against Conoco unless the plaintiffs showed that the gas stations had an agency relationship with Conoco. Id. (citing Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 393 (1982)).

The court held that Conoco had no agency relationship with the gas stations because Conoco lacked control over the daily operations of the gas stations. Id. at 808. This lack of control was evidenced by the contracts between Conoco and the gas stations, which specified that each store was an independent business. Id. Because there was no agency relationship, Conoco was not liable for the acts underlying the suit. Id.

Similarly, the documents provided by GM show that Sewell is an independent business and that GM does not control Sewell's daily operations. Accordingly, GM has no agency relationship with Sewell and cannot be held liable for any improper acts that occurred at the Sewell dealership. Moreover, because Causey eventually had his car repaired under warranty by another authorized GM dealer, Causey cannot show that an enumerated contract right was violated. Therefore, the district court did not err in dismissing Causey's claim against GM.

CONCLUSION

For the foregoing reasons, the district court's grant of Sewell's motion to dismiss for failure to state a claim is REVERSED and REMANDED for further proceedings not inconsistent with this opinion. The district court's grant of GM's motion to dismiss, or in the alternative, motion for summary judgment is AFFIRMED.

7

AFFIRMED in part; REVERSED and REMANDED in part.