# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2025

Lyle W. Cayce
Clerk

No. 24-40215

Christopher De Leon, *doing business as* De Leon Aircraft Maintenance Professional,

*Plaintiff—Appellee*,

*versus*

Anthony Munoz,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:22-CV-210

Before Ho, Engelhardt, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellant Andrew Munoz[1] appeals the district court's denial of his Rule 12(b)(6) motion seeking dismissal, on the basis of qualified immunity, of claims for damages that Plaintiff-Appellee Christopher De Leon d/b/a De Leon Aircraft Maintenance Professional ("De Leon")

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] The record reflects that Andrew Munoz was incorrectly named, as Anthony Munoz, in the district court.

No. 24-40215

asserted against him pursuant to 42 U.S.C. § 1983.  We REVERSE and REMAND.[2]

## I.

This lawsuit arises out of events occurring at the Mid-Valley Airport ("Airport") in Weslaco, Texas, beginning in April 2020.[3]  The City of Weslaco ("City") owns the Airport.  Munoz was the Airport Director.  De Leon, an aircraft mechanic, worked at a flight school that operated at the Airport between 2011 and 2013.  When the school closed in 2013, De Leon established his aircraft maintenance business, operating in Hangar E8 at the Airport.  He is a FAA-certified inspector and, since 2015, has held a TSA badge and a Transportation Worker Identification Credential card.  These licenses and credentials permit him access to American airports, seaports, and ports of entry.

In May 2018, De Leon purchased the building designated as Airport Hangar W6.  On or about June 5, 2018, De Leon entered into a lease agreement with the City for the lease of the land on which W6 is located.  The lease had a five-year term and was renewable for a subsequent five-year term.  On

---

[2] In addition to the issues discussed herein, the parties disagree whether this court has jurisdiction to hear the appeal. De Leon argues that the district court's March 8, 2023 ruling (on Munoz's first motion to dismiss) rendered his April 2, 2024 notice of appeal (of the district court's March 5, 2024 ruling) untimely.  We disagree.  The record reflects that the district court's March 8, 2023 denial of Munoz's first motion to dismiss (addressing De Leon's May 5, 2022 original petition) was without prejudice to his right to refile after mediation.  The March 8, 2023 ruling was not a final, unequivocal refusal to render a pretrial determination of Munoz's qualified immunity defense.  Hence, it was not an appealable final decision for purposes of 28 U.S.C. § 1291. *Ueckert v. Guerra*, 38 F.4th 446, 453 (5th Cir. 2022).  Nor was Munoz's August 1, 2023 second motion to dismiss, directed to De Leon's July 20, 2023 First Amended Complaint, a "refiling" of substantially the same motion as his first. *Phillips v. Montgomery County*, 24 F.3d 736, 738 (5th Cir. 1994).

[3] Unless otherwise indicated, these facts are taken from De Leon's July 20, 2023 "First Amended Complaint" and the exhibits attached thereto.

or about February 15, 2019, De Leon leased Airport Hangar W32 at the Airport from Michael Ray Poindexter (who leased the underlying land from the City). De Leon later purchased the building from Poindexter and continued to sublease the land. As of April 2020, De Leon utilized both W6 and W32 in his aircraft maintenance business. On or about April 21, 2020, someone burglarized W6, taking two valuable items and damaging the door lock to De Leon's plane. During the morning of April 21, De Leon reported the incident to the City of Weslaco, stating that he wanted to press charges.

According to the April 29, 2020 affidavit that Munoz provided to the Weslaco Police Department, and attached to his motion to dismiss, Russel Remy reported an additional burglary, occurring sometime during the late night hours of April 20, 2020, or the early morning hours of April 21, 2020, at the Airport. Both Remy and De Leon were named as suspects on the other's report. As a result of the two being suspects, Munoz reportedly told De Leon and Remy that they both were suspended from accessing the Airport until the police department had conducted its investigation.

## A. Arrest and Prosecution

Contending that De Leon had entered the Airport premises despite being aware of his suspension, Munoz informed Weslaco Police Department Investigator Chris D. Ramirez, on April 29, 2020, that he wanted to proceed with criminal trespass charges against De Leon. As a result, De Leon was arrested, on May 5, 2020, for the offense of "Criminal Trespass Misdemeanor Class B, in violation of Texas Penal Code § 30.05," and detained and incarcerated at the Weslaco City Jail and the Hidalgo County Jail.

No. 24-40215

The misdemeanor trespass offense for which De Leon was arrested is found in Section 30.05 of the Texas Penal Code, which provides, in pertinent part:

**§ 30.05. Criminal Trespass**

(a) A person commits an offense if the person enters or remains on or in property of another, including residential land, agricultural land, a recreational vehicle park, a building . . . , or an aircraft or other vehicle, without effective consent and the person:

>    (1) had notice that the entry was forbidden; or

>    (2) received notice to depart but failed to do so.

(b) For purposes of this section:

>    (1) "Entry" means the intrusion of the entire body.

>    (2) "Notice" means:

>>        (A) oral or written communication by the owner or someone with apparent authority to act for the owner[.]

*See* Tex. Penal Code Ann. § 30.05 (West).[4]  Citing a one-page document signed by a Hidalgo County Assistant Criminal District Attorney on September 2, 2020, and filed with the County Clerk on September 4, 2020, De Leon avers that his alleged criminal trespass occurred on April 21, 2020. And, according to De Leon, he did not receive written or verbal notice, on or prior to April 21, 2020, that he was prohibited from entering the Airport premises.

_____

[4] *See* V.T.C.A., Penal Code § 30.05 (Text of section effective until Jan. 1, 2025).

4

No. 24-40215

The September 2020 document referenced by De Leon, which is Exhibit No. 4 to the First Amended Complaint, lacks a title. The top portion of the document is an affidavit in which the affiant, whose signature and name are illegible (but clearly are not "Andrew Munoz") states, under oath:

> that (s)he has good reason to believe and does believe that[,] in Hidalgo County, Texas[,]
>
> CHRISTOPHER DELEON, on or about the 21st day of April, 2020, did then and there intentionally and knowingly enter property of another, namely Mid Valley Airport c/o Andrew Munoz, hereafter styled the complainant, without the effective consent of the complainant, and the defendant had notice that the entry was forbidden.

AGAINST THE PEACE AND DIGNITY OF THE STATE.

The bottom portion of the document, which is signed by a Hidalgo County Assistant Criminal District Attorney (whose signature also is illegible), states:

> IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:
>
> COMES NOW the undersigned Assistant Criminal District Attorney of Hidalgo County, Texas, in behalf of the State of Texas, and presents in and to the County Court at Law No. 1 of Hidalgo County, Texas, that heretofore and before the presentment of this information,
>
> > In Hidalgo County, Texas, CHRISTOPHER DELEON, on or about the 21st day of April, 2020, did then and there intentionally and knowingly enter property of another, namely Mid Valley Airport c/o Andrew Munoz, hereafter styled the complainant, without the effective consent of the complainant, and the defendant had notice that the entry was forbidden.

5

No. 24-40215

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Munoz refers to this untitled document as the Assistant District Attorney's "criminal complaint," whereas the bottom portion of the document references "the presentment of this information." In any event, since the document appears to formally commence the State of Texas' prosecution of De Leon for the misdemeanor trespass offense, we hereafter refer to it as the "ADA's September 2020 Affidavit and Information."[5]

Based on his assertion that Munoz did not notify him, on or prior to April 21, 2020, that he was banned from entering the Airport premises, De Leon contends that there was no probable cause to support his May 5, 2020 arrest or the formal charges brought by a Hidalgo County Assistant Criminal District Attorney on behalf of the State of Texas in early September 2020.[6] Specifically, citing a transcript that is Exhibit No. 3 to his First Amended Complaint, De Leon asserts that Munoz "provided sworn testimony that the first notice that [Munoz] provided to De Leon that [De Leon] was banned from entering the premises of [the Airport] was on April 29, 2020, and [that] the notice was provided via text message and phone calls between himself and De Leon."

Ultimately, on March 20, 2023, the Presiding Judge of Hidalgo County Court at Law No. 1, acting on a motion filed by an assistant criminal

_____

[5] *See* Tex. Code Crim. Proc. Ann. arts. 21.01–21.31 ("Indictment" and "Information"); *id.* art. 21.20 ("An 'information' is a written statement filed and presented in behalf of the State by the district or county attorney, charging the defendant with an offense which may by law be so prosecuted."); *id.* art. 21.22 ("Information based upon complaint").

[6] In addition to citing the ADA's September 2020 Affidavit and Information, De Leon alleges, in his First Amended Complaint, that "he made an appearance in the criminal case on September 8, 2020," and that "[t]he criminal proceeding continued until it was concluded on March 20, 2023."

district attorney, signed an order dismissing the criminal trespass charge against De Leon.  The order is Exhibit No. 5 to the First Amended Complaint.  The stated reason for dismissal is:  "The evidence is insufficient."  As a result of the arrest on the trespass charge, De Leon claims that he incurred lost earnings, mental anguish, payment of a bond, and attorney's fees.

## B. Four-Month Exclusion from the Airport

De Leon also alleges that, in addition to inciting his arrest, "City Airport personnel, including Munoz . . . denied [him] access to . . . [the] Airport and his hangars" for "an approximate 4-month period."  As a result, De Leon contends that he "was effectively deprived of his property by the City and Munoz[,] which has caused [him] to lose out on thousands of dollars of expected profits from customers who had entrusted him with their airplanes."  He maintains that this denial of access to his property resulted in a net income loss of $125,000.00 or more, but does not specify when the "approximate 4-month period" began or ended.

Notably, Exhibit No. 7 to the First Amended Complaint, which is a June 2, 2020 letter to De Leon from the City's General Counsel, Juan Gonzales, states:  "You violated the terms of the [land] lease" that "you are currently subleasing" when "you violated the exclusion order" given by Munoz, the Airport manager.[7]  The letter further demands that "[De Leon] vacate the premises at Hangar W6 and W32" at the Airport and that failure to vacate the premises would result in the City instituting a forcible detainer suit against De Leon.  The letter additionally states that "your lease with the City

---

[7] Notably, though this letter is addressed to De Leon and refers to his conduct, its salutation states: "Dear Ms. Martinez:."  Because the parties do not mention this inconsistency, we will presume that it has no bearing on the instant dispute.

is hereby terminated pursuant to the Airport Rules and Regulations," but fails to reference the specific rule/regulation on which the City relied.

But Exhibit No. 8 to the First Amended Complaint, a May 8, 2023 letter to De Leon from Gonzales, references a February 22, 2023 request for a lease extension from De Leon, and states that the "lease will not be extended, [his] lease with the City is hereby terminated effective June 5th, 2023, and [De Leon is] to vacate the premises at that time." The letter further states: "Notice is hereby given, and demand is hereby made that you vacate the premises at the Weslaco Airport on or before June 5th, 2023. If you do not vacate the premises the City will institute a forcible detainer suit against you immediately thereafter."

## C. De Leon Files Suit

On May 5, 2022, De Leon filed suit in state court against the City and Munoz, seeking relief under 42 U.S.C. §§ 1983 and 1988, and asserting that "[t]he acts and omissions described herein violated Plaintiff's constitutional rights, including but not limited to, those guaranteed him by the Fourteenth Amendment[] to the United States Constitution." The defendants removed the action to federal court on July 1, 2022, and filed their first motion to dismiss on November 10, 2022. In that motion, Munoz asserted that "he is entitled to qualified immunity." At a March 8, 2023 hearing, the district judge orally denied the defendants' first motion to dismiss without prejudice to refiling.

On July 20, 2023, De Leon filed his First Amended Complaint. Therein, De Leon asserts a constitutional takings claim against the City and Munoz, alleging that he has a constitutional right under the Fifth and Fourteenth Amendments (to not be deprived of his property without just compensation) that was violated when he was ousted from his property at the Airport for four months and lost net income of approximately $125,000.00

for which he has not been compensated. Regarding Munoz's qualified immunity, De Leon argues Munoz's conduct was not objectively reasonable in light of clearly established law.

Against Munoz, De Leon also asserts a Fourth Amendment claim under § 1983 for malicious prosecution, as well as a Fourth Amendment claim under § 1983 asserting a violation of its protection against unreasonable seizures and the requirement that warrants be issued only upon a good faith showing of probable cause. More particularly, De Leon contends that Munoz violated his Fourth Amendment rights (1) by signing an affidavit (to be used to secure a warrant for his arrest and prosecution for a criminal trespass offense) that omitted and misstated key facts, including that Munoz had not banned De Leon from Weslaco Airport *prior* to De Leon's alleged trespass; and (2) by falsely telling the arresting officer (who secured the arrest warrant) that De Leon had been advised of, and understood, the airport ban *prior* to his alleged trespass. These omissions and misrepresentations, De Leon contends, caused him to be arrested for, and formally charged with, criminal trespass in violation of Fourth Amendment's probable cause requirements. Regarding qualified immunity, De Leon argues Munoz's conduct was not objectively reasonable in light of clearly established law.

On August 1, 2023, the City and De Leon filed a second motion to dismiss, with Munoz again asserting entitlement to qualified immunity. At a March 5, 2024 hearing, the district judge orally denied the motion, including Munoz's "assertion of qualified immunity[.]"[8] The district court reasoned:

---

[8] Prior to issuing the ruling, the district court judge first inquired about and then urged the parties to pursue further mediation efforts. Defense counsel advised: "Mr. De Leon does continue to be at the airport at this time." Plaintiff's counsel added: "[H]e's still at the airport, but the FAA has basically said because he's an aircraft mechanic that the City has to offer him a contract or basically keep him at the airport. So, he's been at the

No. 24-40215

The Court finds that the Defendants['] present argument is better addressed in a Motion for Summary Judgment if relying upon facts outside the pleadings and support. Therefore, the Court would deny the Motion to Dismiss.

The Court finds that the Plaintiff has presented sufficient allegations, the same violations under 4th, 5th, and 14th Amendments.

Plaintiff alleges that Defendant Munoz on behalf of the City directed the Plaintiff be barred from the airport and be arrested and denied Plaintiff access to his warehouse, hangar, properties at the airport.

I would also deny the assertion of qualified immunity at this point as well.

This is not to say that the Defendants raise some serious issues with the claim as well, which may not survive summary judgment.

I will need to establish that Munoz is a final policy maker [] [t]o impose any liability upon the City of Weslaco[.] Plaintiff will further need to establish Munoz unreasonably directed the actions towards arrest[] and prosecution of Plaintiff.

However, we're not here on a Motion for Summary Judgment, and I'm not presently deny — I'm not — and I am presently denying the Defendants' Motion to Dismiss, but we're — I haven't — I haven't ruled on the Motion for Summary Judgment."

## II.

The qualified immunity doctrine shields a public official, sued in his individual capacity, from liability for civil damages insofar as his conduct is

---

airport without a lease or without any—without any ground type of lease at the airport." "But, yes, he is still . . . out at the airport and doing business at the airport." *Id*.

within the scope of his discretionary authority and does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022); *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021). "[Q]ualified immunity is 'an immunity from *suit* rather than a mere defense to *liability*.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis added)). Accordingly, a defendant who is entitled to qualified immunity is to be afforded its protection "at the earliest point the defense's applicability is determinable." *Cole v. Carson*, 935 F.3d 444, 457 (5th Cir. 2019).

## A.

To prevail against a good faith assertion of qualified immunity, a plaintiff must satisfy a two-pronged test. "First, the plaintiff must show 'that the official violated a statutory or constitutional right.'" *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). Second, the plaintiff must show that "the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Bailey v. Iles*, 87 F.4th 275, 282 (5th Cir. 2023) (quoting *Cole*, 935 F.3d at 451). Courts have discretion to decide, in light of the circumstances of the particular case at issue, which of the two prongs to consider first. *Pearson*, 555 U.S. at 242; *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015). They also have "discretion 'to decline entirely to address the' first question . . . [and] 'skip straight to the second question concerning clearly established law.'" *Roque v. Harvel*, 993 F.3d 325, 332 (5th Cir. 2021) (quoting *Morgan*, 659 F.3d at 384). An officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey*, 87 F.4th at 282 (quoting *Cole*, 935 F.3d at 451).

No. 24-40215

An official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014); *see also Melton*, 875 F.3d at 261 ("[A] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009) (quotation omitted) (emphasis added).

The critical question is "whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Roque*, 993 F.3d at 334 (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)); *see also Tucker v. City of Shreveport*, 998 F.3d 165, 174 (5th Cir. 2021) ("[Q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011))). "To subject [officials] to any broader liability would be to 'disrupt the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties.'" *Ziglar v. Abbasi*, 582 U.S. 120, 151–52 (2017) (quoting *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). "For then, both as a practical and legal matter, it would be difficult for officials [to] 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Id.* (quoting *Davis*, 468 U.S. at 195).

A plaintiff can demonstrate a clearly established right by identifying a case or "'body of relevant case law' [] in which 'an officer acting under similar circumstances . . . was held to have violated the [Constitution].'" *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (quoting

12

*District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)) (cleaned up). Because "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established,'" our "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Mullenix*, 577 U.S. at 12 (first quoting *al-Kidd*, 563 U.S. at 742; and then quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). That said, "[i]t is not necessary . . . that 'the very action in question has previously been held unlawful.'" *Ziglar*, 582 U.S. at 151 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In short, "[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741 (first citing *Anderson*, 483 U.S. at 640; and then citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

## B.

In this instance, qualified immunity was asserted by means of a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) authorizes the filing of motions to dismiss asserting, as a defense, a plaintiff's "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). Claims may be dismissed under Rule 12(b)(6) "on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (first citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); and then citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Whether the defendant's conduct violated a constitutional right and whether the right was "clearly established," at the time of the challenged conduct, are both questions of law for the court. *Joseph*, 981 F.3d at 331; *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("Whether an official's conduct was objectively reasonable [in light of the law that was clearly established at the time of the disputed action] is a question of law for the court, not a matter of fact for the jury.") (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999))). At the motion-to-dismiss stage, "[i]t is the plaintiff's burden to

demonstrate that qualified immunity is inappropriate." *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)).

When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead "facts which, if proved, would defeat [the] claim of immunity." *Guerra v. Castillo*, 82 F.4th 278, 285 (5th Cir. 2023) (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)) (alteration in original). "The crucial question is whether the complaint pleads facts that, if true, would permit the inference that [a defendant is] liable under § 1983, and would overcome [his] qualified immunity defense.'" *Id.* (quoting *Terwilliger*, 4 F.4th at 280) (cleaned up.)

Neither "'naked assertion[s]' devoid of 'further factual enhancement'" nor "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, . . . suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (cleaned up)); *see also Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (elements of a plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant" (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–515 (2002))).

To avoid Rule 12(b)(6) dismissal, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[W]here the well-pleaded facts [of a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. Rule Civ. P. 8(a)(2) (cleaned up)). A complaint's allegations "must make relief plausible, not merely conceivable, when taken as true." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180,

186 (5th Cir. 2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations omitted)).

Factual allegations that are "merely consistent with a defendant's liability . . . stop[] short of the line between possibility and plausibility of entitlement to relief," and are inadequate. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Accordingly, the requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

## C.

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is usually limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *See, e.g.*, *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 639 n.2 (5th Cir. 2005). However, "[w]hen a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)); *Lone Star Fund V (U.S.)*,

No. 24-40215

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

### III.

Our "review of the denial of a motion to dismiss predicated on a defense of qualified immunity is *de novo*." *Lincoln v. Barnes*, 855 F.3d 297, 300–01 (5th Cir. 2017). "We must take the complaint's factual allegations as true and view them in the light most favorable to the plaintiff." *Id.* at 301 (internal quotation marks and citation omitted). The plaintiff "must plead specific facts that both allow the court to draw the inference that the defendant is liable for the harm he has alleged and defeat a qualified immunity defense with equal specificity." *Id.*

### A. Takings Claim

The Fifth Amendment to the United States Constitution provides, in pertinent part: "No person shall . . . be deprived of life, liberty, or property, without due process of law; nor shall private property taken for public use, without just compensation." U.S. Const. amend. V. The Fifth Amendment's takings prohibition is binding upon state governments through the Fourteenth Amendment. *See also Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012).[9] Such takings may come in two

---

[9] The Fourteenth Amendment provides, in pertinent part: "No state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any

forms—physical or regulatory. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321 (2002). The type of taking at issue is determined by "whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021). If the former is true, a *per se* taking has occurred. *Id.* at 149–50. If the latter is true, analysis under *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978), is required to determine if there is a regulatory taking. *Id.* The Supreme Court has also explained the distinction between *per se* and regulatory takings as "cases involving a permanent physical occupation, on the one hand, and cases involving a more temporary invasion, or government action outside the owner's property that causes consequential damages within, on the other. A taking has always been found only in the former situation." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982) (collecting cases).

Munoz argues that De Leon's "takings" allegations, accepted as true, do not satisfy the "clearly established" prong of his qualified-immunity pleading burden. That is, Munoz maintains, relevant precedent did not provide him with requisite fair warning that his conduct vis-à-vis De Leon would constitute an unconstitutional taking of private property for public use without just compensation. We agree.

Assuming, without deciding, that De Leon's assertions of a four-month exclusion from Airport Hangars W6 and W32 allege a violation of his rights under the Fifth Amendment's Takings Clause, he has not demonstrated that the same was clearly established relative to Munoz's

---

person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

conduct. He does not cite, and we are not aware of, any prior case in which a governmental official acting under similar circumstances was held to have violated the constitutional protections against governmental takings of private property for public use without just compensation. Indeed, the only case De Leon offers for the proposition that the law was clearly established is a district court case, *Spell v. Edwards*, No. 12-795, 2013 WL 5232341 (E.D. La. Sept. 13, 2013). This singular, non-binding case is insufficient to show a clearly established violation of law. *See, e.g.*, *al-Kidd*, 563 U.S. at 742 (recognizing that "clearly established" requires controlling authority or "a robust 'consensus of cases of persuasive authority'" (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999))); *Brady v. Fort Bend County*, 58 F.3d 173, 175 (5th Cir. 1995) ("[W]e look to the decisions of the Supreme Court and our own decisions that the law was clearly established in this circuit.").

Furthermore, *Spell* does not place the illegality of Munoz's actions beyond debate such that he could have reasonably anticipated that his conduct would give rise to liability for damages. In other words, *Spell* offers no factual similarities to the case before us from which it can be said that the purported Takings Clause violation was clearly established. Accordingly, Munoz is entitled to qualified immunity relative to De Leon's takings claim.

B. <u>Malicious Prosecution and Arrest Without Probable Cause</u>

The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. As set forth above, De Leon asserts a Fourth Amendment claim under § 1983 for malicious prosecution, instituted by Munoz, as well as a Fourth Amendment claim under

§ 1983 asserting a violation of its protection against unreasonable seizures and the requirement that arrest warrants be issued only upon a good faith showing of probable cause.

More particularly, De Leon maintains that Munoz violated his Fourth Amendment rights (1) by "sign[ing] an affidavit [to be used to secure a warrant for his arrest and prosecute him for a criminal trespass offense] that lacked probable cause by omitting and misstating key facts, including that Munoz had not banned De Leon from Weslaco Airport *prior* to De Leon's alleged trespass"; and (2) by "falsely telling the arresting officer who [had] secured the arrest warrant that De Leon had been advised of . . . and understood the airport ban *prior* to his alleged trespass." *See* Munoz's April 29, 2020 Affidavit; First Amended Complaint, ¶¶ 80, 83, 86–88 ("**MUNOZ** provided a false, misleading, and incomplete Affidavit to the **WESLACO** Police Department in support of prosecution[.]"). These omissions and misrepresentations, De Leon contends, caused him to be arrested for, and formally charged with, criminal trespass in violation of the Fourth Amendment's probable cause requirement.

Much of the parties' briefing of these claims is devoted to debating the "clearly established" aspect of Munoz's qualified immunity defense, namely, whether the Supreme Court had recognized the existence of a § 1983 constitutional malicious prosecution claim prior to the 2020 events on which De Leon's claims are based. Munoz points to the Supreme Court's 2022 decision in *Thompson v. Clark*, 596 U.S. 36 (2022). De Leon relies on *Manuel v. City of Joliet*, 580 U.S. 357, 363–64 (2017), and *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Further assessment of the parties' debate is not necessary in this case, however, because De Leon's allegations do not support a reasonable inference that a Fourth Amendment violation occurred.

In support of his claims, De Leon, quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978), contends that a defendant's Fourth Amendment rights are violated if (1) [an] affiant, in support of the warrant, includes "a false statement knowingly and intentionally, or with reckless disregard for the truth" and (2) "the allegedly false statement is necessary to the finding of probable cause." And, De Leon argues that he has plausibly alleged that Munoz deliberately submitted false information in support of De Leon's arrest and prosecution for criminal trespass. We disagree.

As set forth above, the offense of criminal trespass occurs when someone enters the property of another, without effective consent, *after* having been notified, orally or in writing, that entry was forbidden. *See* Tex. Penal Code § 30.05. Because Munoz testified that he had first notified De Leon of his ban from the Airport premises on April 29, 2020, but De Leon's arrest (allegedly) was predicated upon his having entered the Airport premises eight days earlier, on April 21, 2020, De Leon argues that "Munoz's [April 29, 2020] affidavit was no doubt false."

De Leon's First Amended Complaint cites two of its attached exhibits in support of his allegations regarding the date of the conduct for which he was arrested (April 21, 2020) and the date that he was notified of his Airport ban (April 29, 2020), specifically the ADA's September 2020 Affidavit and Information and the transcript excerpts of Munoz's sworn testimony (provided on an unspecified date in an unspecified proceeding). However, when these two documents are considered together with Munoz's April 29, 2020 affidavit,[10] it is evident that the factual allegations of De Leon's First

_____

[10] That Munoz's affidavit is an attached exhibit to Munoz's motion to dismiss, rather than an exhibit to the First Amended Complaint, does not preclude our consideration of its contents. As the cases cited above indicate, because the substance of Munoz's affidavit is referenced in paragraphs 80, 83, and 86–88 of the First Amended Complaint and is central to De Leon's Fourth Amendment claims, we may properly

No. 24-40215

Amended Complaint do *not* permit the court to reasonably infer that Munoz knowingly and intentionally, or with reckless disregard for the truth, submitted false information in support of De Leon's arrest warrant and subsequent prosecution.

Significantly, regarding the date of De Leon's alleged trespass, the single document on which De Leon's First Amended Complaint relies to support his assertion that it occurred on the very same day that he and Remy reported burglaries—April 21, 2020—is the ADA's September 2020 Affidavit and Information. That document, however, was *not* signed by Munoz.[11] Nor is it apparent, or even alleged, that Munoz saw or approved the contents of that document prior to the ADA's filing it with the court. In contrast, the transcript excerpts (of Munoz's testimony), which De Leon also attached to his First Amended Complaint, reveal that Munoz testified, under oath, that De Leon was arrested (on May 5, 2020) as a result of "an alleged trespass on April 25th," i.e., *not* April 21st.

Munoz's April 29, 2020 affidavit, which memorializes his statement to Weslaco Police Investigator Ramirez on that date, likewise links his decision to proceed with formal charges to De Leon's April 25th conduct. Specifically, it reports: "On April 25, 2020, at about 12:10 pm," Munoz was notified by the Airport Ramp Supervisor that "De Leon was at the . . . Airport crossing the runway[,]" and that on April 29th, Munoz informed Inspector Ramirez that he wanted "to proceed with formal charges for criminal trespass against De Leon."

---

consider it in assessing whether De Leon has stated the plausible claim for relief necessary for him to defeat Munoz's qualified immunity defense. *See, e.g.*, *Walker*, 938 F.3d at 735; *Sullivan*, 600 F.3d at 546; *Lone Star Fund V*, 594 F.3d at 387.

[11] Munoz suggests that the date disparity exists because the person preparing the affidavit portion of the document likely supplied the incorrect date of the trespass.

Regarding the prior notice required by the trespass statute, Munoz's April 29, 2020 affidavit reports that he became aware, on April 21, 2020, of the two reported burglaries;  that De Leon and Remy were both suspects and suspended from accessing the Airport; that the suspension was communicated by telephone conversations *and* text message to De Leon; and that, "[s]ince their notification," both Remy and De Leon had "been in contact with [Munoz] daily as to when the suspension would be lifted[.]"

Notably, the transcript excerpts attached to De Leon's First Amended Complaint reveal that Munoz did *not* testify that that the "first notice that he provided to De Leon that he was banned from entering the [Airport premises] was on April 29, 2020."  Instead, contrary to De Leon's assertions regarding the content of the transcript excerpts, Munoz's testimony simply confirmed that *only* his first *written* notice to De Leon was provided by means of a text message sent on April 29th.  Munoz also testified that, during the course of the police department's investigation of the Airport burglaries reported by De Leon and Remy, De Leon was told *verbally* via phone calls (between De Leon and Munoz) that both he and Remy were suspended and could not be at the airport during the course of that investigation, that De Leon understood that he was not allowed on the property during that time, and that De Leon violated that suspension on April 25th.  In other words, the contents of the transcript contradict De Leon's characterization of the substance of Munoz's testimony.  And, when that occurs, the exhibit controls.  *See Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) ("When 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004))).

In short, despite the discrepancy in the ADA's September 2020 Affidavit and Information, in comparison with the transcript of Munoz's oral

testimony and Munoz's affidavit, regarding the date of De Leon's alleged trespass—i.e., April 21st versus April 25th, the documents on which De Leon relies to support the factual assertions in his First Amended Complaint do *not* permit a reasonable inference that Munoz *deliberately* or *recklessly* submitted false information in seeking De Leon's arrest. Accordingly, De Leon has not plausibly alleged that Munoz caused him to be arrested for, and formally charged with, trespass in violation of Fourth Amendment's probable cause requirement. Because De Leon has not plausibly alleged a violation of his Fourth Amendment rights, Munoz is entitled to qualified immunity.

## IV.

A plaintiff presented with a qualified-immunity defense at the pleadings stage must allege facts that, if proved, would defeat the defendant's claim of immunity. De Leon has not satisfied that burden. Accordingly, we REVERSE and REMAND for dismissal of the claims asserted against Andrew Munoz.